UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

UNITED STATES OF AMERICA,

Plaintiff,

**SEALED**

v.

Case No.

APPROXIMATELY 55,608.765 TETHERUS
(USDT) CRYPTOCURRENCY FROM
BINANCE ACCOUNT NUMBER ENDING
IN 9745,

Defendant.

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, by its attorneys, Richard G. Frohling, United States

Attorney for the Eastern District of Wisconsin, and Bridget J. Schoenborn, Assistant United

States Attorney for this district, alleges the following in accordance with Supplemental

Rule G(2) of the Federal Rules of Civil Procedure:

### Nature of the Action

1. This is a civil action to forfeit property to the United States of America, under

18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6), for violations of 18 U.S.C. § 1956(a)(1) and

21 U.S.C. §§ 841(a)(1), 841(h), and 846.

### The Defendant In Rem

2. The defendant property, approximately 55,608.765 TetherUS (USDT)

cryptocurrency from Binance account number ending in 9745, held in the name of Nikhil Suresh

Mathre, was seized on or about May 20, 2022, in San Francisco, California.

3. The Drug Enforcement Administration seized the defendant property pursuant to seizure warrant 22-904M issued by United States Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin on May 20, 2022. This warrant is sealed until June 27, 2023.

4. The defendant property is presently in the custody of the Drug Enforcement Administration in Milwaukee, Wisconsin.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

6. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

7. Venue is proper in this judicial district under 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred, at least in part, in this district.

## Basis for Forfeiture

8. The defendant property, approximately 55,608.765 TetherUS (USDT) cryptocurrency from Binance account number ending in 9745, is subject to forfeiture under 21 U.S.C. § 881(a)(6) because (1) it represents proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) it represents proceeds of distribution of controlled substances by means of the Internet and a conspiracy to deliver, distribute, or dispense controlled substances by means of the Internet, in violation of 21 U.S.C. §§ 841(h) and 846.

2

9.      The defendant property, approximately 55,608.765 TetherUS (USDT) cryptocurrency from Binance account number ending in 9745, is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because it was involved in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1).

## Statutory background

10.     The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 amended the Controlled Substances Act to address online pharmacies, codified at Title 21, United States Code, Section 829.  No controlled substance that is a prescription drug, as determined by the Federal Food, Drug and Cosmetic Act, may be delivered, distributed, or dispensed by means of the Internet without a valid prescription, as required by Title 21, Code of Federal Regulations, Section 1306.09(a) in violation of 21 U.S.C. §§ 829(e), 841(a)(1), 841(h), and 843(c)(2)(A).

11.     According to 21 U.S.C. § 829(e),

A.      The term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by –

    i.      a practitioner who has conducted at least one in-person medical evaluation of the patient; or

    ii.     a covering practitioner.

B.      The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals.

C.      The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who –

    i.      has conducted at least one in-person medical evaluation of the patient or an evaluation of the patient through the practice of telemedicine, within the previous 24 months; and

3

ii.     is temporarily unavailable to conduct the evaluation of the patient.

12.     The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies.

13.     According to C.F.R. § 1301.11(b) as provided in § 303(f) and § 401(h) of the Act (21 U.S.C. § 823(f) and § 841(h)), it is unlawful for any person who falls within the definition of "online pharmacy" (as set forth in §102(52) of the Act (21 U.S.C. § 802.52) and C.F.R. § 1300.4(h)) to deliver, distribute, or dispense a controlled substance by means of the Internet if such person is not validly registered with a modification of such registration authorizing such activity (unless such person is exempt from such modified registration requirement under the Act or this chapter).

**Facts**

14.     Tapentadol is a Schedule II controlled substance.

15.     Carisoprodol is a Schedule IV controlled substance.

16.     Modafinil is a Schedule IV controlled substance.

**Investigation of Online Pharmacies Distributing Controlled Substances Without Valid Prescriptions**

17.     Agents and task force officers with the Milwaukee District Office of the Drug Enforcement Administration ("DEA") have been investigating online pharmacies that advertise for sale both controlled and non-controlled pharmaceuticals, including Schedule II and IV controlled substances.

4

18.     DEA's investigation identified one such drug trafficking organization ("DTO") that operated illegal online pharmacy websites, including www.buyetizolam.com and www.comprartapentadol.com.

19.     Many of the DTO's drug parcels originated from India and were shipped to the United States.  Some drug parcels originated from India and were then shipped through Singapore or Germany to the United States.

**Co-conspirators identified as "SOI-1" and "SOI-2"**

20.     Agents identified a network of co-conspirators involved in the DTO, including one co-conspirator based in Florida ("SOI-1") and another based in Texas (SOI-2").

21.     SOI-1 and SOI-2 received bulk shipments of controlled pharmaceuticals from overseas and reshipped them to customers throughout the United States.

22.     From about July 2019 through August 2020, undercover agents had purchased controlled pharmaceuticals numerous times from SOI-1 and SOI-2, without providing valid prescriptions.

23.     In August 2020, agents executed search warrants at the residences of SOI-1 and SOI-2 and seized, among other things, electronic devices and documents containing evidence identifying drug suppliers and customers, along with communications related to the sale of controlled substances and money laundering of drug proceeds.

24.     Agents interviewed SOI-1, who provided information including, but not limited to, the following:

> A.     Two individuals having the initials P.D.L. and K.V.D.H., and an individual known as "Ben" were co-owners of the online pharmacies www.buyetizolam.com ("Buyetizolam") and www.comprartapentadol.com ("Comprartapentadol").  P.D.L. was a 40% owner, K.V.D.H. was a 40% owner, and "Ben" was a 20% owner.

5

B.     Buyetizolam sold etizolam (an unapproved drug in the United States) and modafinil (a Schedule IV controlled substance), and Compratapentadol sold tapentadol (a Schedule II controlled substance), modafinil (a Schedule IV controlled substance), tramadol (a Schedule IV controlled substance), and carisoprodol (a Schedule IV controlled substance).

C.     In June 2018, the owners of Buyetizolam and Comprartapentadol contacted SOI-1. SOI-1 then began working as a payment processor for all orders placed on Buyetizolam and Comprartapentadol. At least 98% of these websites' sales were to customers in the United States.

D.     The primary drug supplier for Buyetizolam and Comprartapentadol was an individual having the initials A.S., who is the owner of India-based pharmaceutical distributor, Premier Medical Agency.

E.     SOI-1 was directed to forward approximately half of the processed drug payments to P.D.L. (for the three co-owners of Buyetizolam and Comprartapentadol) and the other half to A.S.'s bank account in India.

F.     In total, SOI-1 processed approximately $1,002,416.42 in United States dollars in drug payments from sales through Buyetizolam and Comprartapentadol for the drugs that were supplied by A.S.

G.     SOI-1 kept a 20% fee for his role in processing the drug payments. In addition, SOI-1 profited separately by selling drugs that SOI-1 received directly from A.S.

H.     SOI-1 communicated primarily with P.D.L. P.D.L. communicated via a WhatsApp phone number and via the email address tinusxxxxxxx@gmail.com. SOI-1 sent the majority of the drug proceeds to P.D.L.'s personal bank account in Germany and a smaller portion of funds via Bitcoin. P.D.L. is a citizen of the Netherlands but resides in Spain.

I.     SOI-1 maintained an Excel spreadsheet of all drug payments that SOI-1 processed for Buyetizolam and Compratapentadol. SOI-1 saved that Excel spreadsheet in Google Drive so that P.D.L. had access to the file by using the email account tinusxxxxxxx@gmail.com. In addition, SOI-1 communicated with P.D.L. about drug orders, drug proceeds, and other drug business at email address tinusxxxxxxx@gmail.com and via P.D.L.'s WhatsApp phone number.

J.     K.V.D.H. resides in the Netherlands and was primarily in charge of the technical side of the drug conspiracy by creating and maintaining the online pharmacy websites, Buyetizolam and Comprartapentadol.

6

K.  "Ben," the third owner of Buyetizolam and Compratapentadol, resides in Holland.  Ben taught P.D.L. and K.V.D.H. how to run an illegal online pharmacy business.  Ben owned additional online pharmacies and was not engaged in the day-to-day operations with Buyetizolam and Compratapentadol.

L.  SOI-1 communicated with A.S. via A.S.'s WhatsApp phone number and email address pmagenxxxxxxx@gmail.com to place drug orders and make drug payments for regular bulk drug shipments to SOI-1's partner, SOI-2, in Texas.  These drug shipments were broken down and reshipped to United States' customers.  SOI-1 stated that some of these drugs had been shipped to undercover case agents in the Eastern District of Wisconsin.

M.  In August 2020, SOI-1 owed P.D.L. and K.V.D.H. funds for processing Buyetizolam customers' drug payments through that website.  P.D.L. instructed SOI-1 to transfer $6,865 in drug payments in the form of Bitcoin to Bitcoin address 13LC1gtP6V2cvhZ2E9RaYPzRpL5SD6xcs6. On approximately August 18, 2020, SOI-2 (at the request of SOI-1) transferred $6,865 in drug payments in the form of Bitcoin to Bitcoin address 13LC1gtP6V2cvhZ2E9RaYPzRpL5SD6xcs6 as instructed by P.D.L.

**Undercover buys from Buyetizolam of controlled substances without valid prescriptions**

**December 1, 2020**

25.  On December 1, 2020, an undercover agent in Milwaukee, Wisconsin ("UC") placed an order from the online pharmacy www.buyetizolam.com for 500 tablets containing a mixture of tapentadol 150 mg and etizolam 2 mg (an unapproved drug in the United States), without providing a valid prescription.

26.  In connection with payment for the December 1, 2020 purchase, UC was directed to conduct a bank transfer to the "Bolle Boos" account with TransferWise.

27.  UC received the shipment of the 500 tablets of the tapentadol and etizolam mixture in blister packs, which had been shipped from India by the shipper Premier Medical Agency.

7

28. According to records from TransferWise related to the "Bolle Boos" account that received the UC's drug payment:

    A. The "Bolle Boos" TransferWise account belonged to P.D.L. in Spain.

    B. The funds from P.D.L.'s "Bolle Boos" account had been transferred to another TransferWise account listing to K.V.D.H.

    C. P.D.L. declared to TransferWise that P.D.L.'s business was "coffee, alarm systems, new niches, food, owner of Spanishmortage.net, and buy and sell domain names," even though the UC's drug payment went to this "Bolle Boos" account.

    D. An image of P.D.L.'s Netherlands passport was provided when P.D.L. opened the account to prove his identity.

29. According to records from TransferWise related to the Premier Medical Agency account:

    A. The account holder for the Premier Medical Agency TransferWise account was A.S. in India.

    B. A.S. proved his identify when he opened the account by providing his Indian Export/Import license depicting his photograph, an Indian tax card, and his Indian driver's license.

**March 10, 2021**

30. On March 10, 2021, a UC in Milwaukee, Wisconsin placed an order from the online pharmacy www.buyetizolam.com for 770 tablets containing a mixture of tapentadol 150 mg and etizolam 2 mg (an unapproved drug in the United States), without providing a valid prescription. The order was shipped in two parcels.

31. In connection with payment for the March 10, 2021 purchase, UC was directed to conduct a bank transfer via Zelle to a bank account linked to email address p3rv3xxxxx@gmail.com and account holder having the initials M.P.

    A. M.P. resides in New Mexico and had replaced SOI-1 as payment processor for Buyetizolam in about November 2020.

B.  M.P. also worked with K.V.D.H. to edit text on the Buyetizolam website.

C.  M.P. transferred the drug payments from Buyetizolam to accounts as directed by K.V.D.H.

32.  UC received one of the two parcels from UC's March 10, 2021 online drug order from the Buyetizolam website. That parcel contained 380 tablets of the tapentadol and etizolam mixture in blister packs. The parcel had been shipped from India, through Germany, by the shipper Premier Medical Agency. The customs declaration for the parcel falsely claimed the product to be "health supplement products." The second parcel, which contained the same tablets, blister packs, and shipping label details, had been seized by U.S. Customs and Border Protection and later turned over to agents.

**August 11, 2021**

33.  On August 11, 2021, a UC in Milwaukee, Wisconsin placed an order from the online pharmacy www.buyetizolam.com for 500 tablets containing a mixture of tapentadol 150 mg and carisoprodol 350 mg, without providing a valid prescription.

34.  In connection with payment for the August 11, 2021 purchase, UC was directed to conduct a Bitcoin transfer to the Bitcoin address 331BJiVMa1gDxuR3vryTSHnzzRusjYELzT.

35.  UC received the shipment of the 500 tablets of the tapentadol and carisoprodol mixture in blister packs, which had been shipped from India, through Germany, by the shipper Premier Medical Agency. The parcel contained a customs declaration which falsely declared the contents as "health supplement products."

9

**Undercover buy from A.S.'s WhatsApp telephone number of controlled substances without valid prescriptions**

36.     On December 21, 2020, a UC in Milwaukee, Wisconsin conducted a purchase directly from A.S., via A.S.'s WhatsApp telephone number, of 2,000 tablets of tapentadol 100 mg and 1,000 tablets of modafinil 200 mg, without providing valid prescriptions.

37.     In connection with payment for the December 21, 2020 purchase, UC was directed to conduct a bank transfer to the Premier Medical Agency bank account in India.  UC was emailed five tracking numbers from pmagenxxxxxxx@gmail.com and further communicated with this email address about payment and the drug transaction.  Many of these emails contained an email signature "AXXXXX SXXXXX."

38.     UC received five parcels from Premier Medical Agency containing the majority of the ordered tablets, which were packaged in blister packs and purported to be tapentadol 100 mg and modafinil 200 mg tablets.  These parcels arrived either directly from India or from India through Singapore.  Two additional parcels containing the same tablets in blister packs were seized by U.S. Customs and Border Protection and turned over to agents.

**Movement of drug proceeds into Binance account number ending in 9745 ("Binance 9745")**

39.     As noted in paragraphs 33-35, on August 11, 2021, a UC purchased scheduled drugs from the online pharmacy www.buyetizolam.com and was instructed to send payment – and did send payment – to the Bitcoin address 331BJiVMa1gDxuR3vryTSHnzzRusjYELzT.

40.     The UC payment of 0.01284251 BTC (approximately $598.05 USD) on August 11, 2021, was processed through a service, BTCPay Server, used by the Buyetizolam website.

41.     According to bank records, Bitcoin address 331BJiVMa1gDxuR3vryTSHnzzRusjYELzT was clustered with a total of 13 Bitcoin addresses

all contained within one private wallet.  This wallet used by Buyetizolam hereinafter will be referred to as "private wallet #1."

42.     Between at least April 25, 2021, and November 2, 2021, private wallet #1 received additional funds consistent with drug payments made by Buyetizolam customers.

43.     On November 2, 2021, UC's August 11, 2021 drug payment, along with other funds from the additional 12 Bitcoin addresses, were transferred to Bitcoin address bc1qnmzamyl0c4rd9mzd5myklcsq72umhrn9e8quak, which is part of another larger private wallet used to receive suspected drug payments from many wallets similar to private wallet #1. This larger private wallet containing Bitcoin address bc1qnmzamyl0c4rd9mzd5myklcsq72umhrn9e8quak is hereinafter referred to as "private wallet #2."   Private wallet #2 consists of 94 Bitcoin addresses.

44.     Records show that Bitcoin was transferred from multiple accounts to Bitcoin addresses contained within private wallet #2.  These transactions were consistent with drug payments made by Buyetizolam customers.  In addition, Bitcoin was transferred out of private wallet #2 to other accounts belonging to the drug trafficking organization.  Based upon the investigation to date, private wallet #2 was used to receive and transfer drug proceeds.

45.     Records show that UC's August 11, 2021 drug payment was transferred from private wallet #1, to private wallet #2, and then to a Bitcoin address with KuCoin exchange, which is a cryptocurrency exchange.  A cryptocurrency exchange can be described as a bank for cryptocurrency.

46.     KuCoin records show that suspected drug proceeds from private wallet #2 (containing the UC's drug payment) had been transferred to three KuCoin accounts.  The specific KuCoin account that received the UC's drug payment was KuCoin account number

ending in 5253 ("KuCoin 5253") with an associated email address of tigerliontrader@protonmail.com.

47.     According to KuCoin records for all three KuCoin accounts that received drug proceeds from private wallet #2, several of the IP addresses used by the account user(s) to access each of the three accounts were the same.  This means that each account was logged into from the same location, and therefore, agents believe that each account is controlled by the same person.  Some of the overlapping IP addresses which were used by the three KuCoin accounts were as follows:

A.     IP address 106.202.196.53 located in India,

B.     IP address 110.226.161.193 located in India,

C.     IP address 106.213.102.26 located in India, and

D.     IP address 106.202.195.58 located in India

48.     Records show that funds transferred from private wallet #2 (used to receive and transfer drug proceeds) were transferred also to five different Binance accounts.  Binance is a cryptocurrency exchange.  One of the five Binance accounts into which drug proceeds from private wallet #2 had been transferred was Binance account number ending in 9745 ("Binance 9745"), the account from which the defendant property was seized.

49.     Records show that Binance 9745 is held in the name of Nikhil Suresh Mathre with an associated email address of tigerliontrader@protonmail.com, which is the same email address associated with KuCoin 5253 into which drug proceeds had been transferred from private wallet #2.  Based upon the investigation to date, agents believe that the same person controls both Binance 9745 and KuCoin 5253 because they are both registered to the same email address.

50.     Agents identified an additional private wallet consisting of 11 Bitcoin addresses, hereinafter referred to as "private wallet #4," used by the drug trafficking organization to receive and transfer drug proceeds.  Records show Bitcoin payments made to private wallet #4 were consistent with drug payments made by Buyetizolam customers.  Records further show at least one transaction on August 5, 2021, in which Bitcoin from private wallet #4 was transferred to Binance 9745 (with associated email address of tigerliontrader@protonmail.com) and at least one transaction on October 12, 2021, in which Bitcoin from private wallet #4 was transferred into KuCoin 5253 (with associated email address of tigerliontrader@protonmail.com).  Based upon the investigation to date, private wallet #4 was used to receive and transfer drug proceeds.

51.     The owner of a Coinbase account emailed back and forth with A.S. (the owner of India-based pharmaceutical distributor, Premier Medical Agency) inquiring about purchasing medications.  The Coinbase account holder then sent payments for the medications via Bitcoin.  These drug payments were transferred to private wallet #4, and then transferred from private wallet #4 to private wallet #2.  Two drug payments were then transferred from private wallet #2 to KuCoin 5253.

52.     Records show that prior to January 26, 2022, nearly all of the funds in KuCoin 5253 had been transferred out of that account.  Records further show that a substantial amount of those funds from KuCoin 5253 had been transferred directly to Binance 9745.

53.     Records for Binance 9745 show an additional private wallet – 1QK3i2H2uXrcLWTSRCCptQxiqzYjFRBssq – had sent funds to Binance 9745 on at least four occasions from February 9, 2021, through August 23, 2021, and had sent funds to KuCoin 5253 on at least two occasions from November 3, 2021, through November 23, 2021.

54.     Based on their training and experience, and the investigation to date, agents believe that the four transactions sent from private wallet 1QK3i2H2uXrcLWTSRCCptQxiqzYjFRBssq to Binance 9745 were drug proceeds because this private wallet also sent funds to two KuCoin accounts known to receive drug proceeds. Furthermore, one of these KuCoin accounts, KuCoin 5253, is believed to belong to the same account holder as Binance 9745 because they are both registered to the same email address, tigerliontrader@protonmail.com.

55.     Records between January 16, 2021, and April 4, 2022, for Binance 9745 show that Binance 9745 had received large deposits of cryptocurrency totaling approximately $2,896,861.52 in United States dollars, and shortly thereafter, transferred those funds out to other accounts. These other accounts receiving the funds from Binance 9745 had received and transferred tens of millions of dollars' worth of cryptocurrency.

56.     Based upon their investigation to date, agents believe that all of the funds transferred to Binance 9745 consist of drug proceeds and that Binance 9745 was being used to launder funds used by this drug trafficking organization.

57.     Based upon their training and experience, agents are aware that criminal proceeds in the form of cryptocurrency are regularly transferred between private wallets and cryptocurrency exchanges, such as Binance 9745, to conceal the source and nature of the funds. Sophisticated drug traffickers and money launderers prefer to use private cryptocurrency wallets, which are stored on personal devices such as a laptop computer, cellular telephone, or thumb drive. This is preferred for the security of these funds since the funds are physically stored in the device (private wallet). Eventually, the funds need to reach a cryptocurrency exchange which is similar to a "bank for cryptocurrency." This is required by the drug trafficker/money launderer

14

because the cryptocurrency exchange is linked to a bank account, and that is how the funds are commonly exchanged from cryptocurrency to fiat currency.

58. Furthermore, based upon their investigation to date, agents believe that this drug trafficking organization has derived in excess of $1 million in drug proceeds from their online sales of pharmaceuticals.

59. On May 20, 2022, in the Eastern District of Wisconsin, United States Magistrate Judge Nancy Joseph issued warrant 22-904M authorizing the seizure of all cryptocurrency in Binance 9745.

60. Agents served warrant 22-904M on Binance and received the defendant approximately 55,608.765 TetherUS (USDT) cryptocurrency from Binance 9745.[1]

**Warrant for Arrest In Rem**

61. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

**Claim for Relief**

62. The plaintiff repeats and incorporates by reference the paragraphs above.

63. By the foregoing and other acts, the defendant property, approximately 55,608.765 TetherUS (USDT) cryptocurrency from Binance account ending in 9745, represents (1) proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) proceeds of distribution of controlled

---

[1] The total cryptocurrency seized from Binance 9745 pursuant to warrant 22-904M was approximately 55,618.76475003 TetherUS (USDT). After Binance deducted its transaction fee, the remaining cryptocurrency available for forfeiture is the defendant approximately 55,608.765 TetherUS (USDT).

substances by means of the Internet and a conspiracy to deliver, distribute, or dispense controlled substances by means of the Internet, in violation of 21 U.S.C. §§ 841(h) and 846.

64.     The defendant approximately 55,608.765 TetherUS (USDT) cryptocurrency from Binance account ending in 9745 is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

65.     By the foregoing and other acts, the defendant property, approximately 55,608.765 TetherUS (USDT) cryptocurrency from Binance account ending in 9745, was involved in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1).

66.     The defendant approximately 55,608.765 TetherUS (USDT) cryptocurrency from Binance account ending in 9745 is therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant property be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment declare the defendant property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and equitable, together with the costs and disbursements of this action.

Dated at Milwaukee, Wisconsin, this 28th day of June, 2022.

Respectfully submitted,

RICHARD G. FROHLING
United States Attorney

By:     *s/BRIDGET J. SCHOENBORN*
BRIDGET J. SCHOENBORN
Assistant United States Attorney
Wisconsin Bar Number: 105396
Attorney for Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin

16

517 East Wisconsin Avenue, Room 530
Milwaukee, WI 53202
Telephone: (414) 297-1700
Fax: (414) 297-1738
E-Mail: bridget.schoenborn@usdoj.gov

**Verification**

I, Scott Simons, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 14 through 60 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task Force Officer with the DEA.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.


Date: _06/28/2022_              _s/SCOTT SIMONS_
                                      Scott Simons
                                      Task Force Officer
                                      Drug Enforcement Administration